IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEON V. LIPSCOMB, #R25793, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> ANTHONY WILLS, ) <br> Q. BAKER (Officer, #16083), and ) <br> LANCE KORANDO, ) <br> ) <br> **Defendants.** ) | Case No. 24-cv-01232-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Keon V. Lipscomb, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims Defendants housed him in unsanitary conditions, provided him with a staple and encouraged him to kill himself, failed to summon help for him, and used excessive force against him. (Doc. 1). He seeks monetary damages and injunctive relief (Doc. 1, p. 10).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff is severely mentally ill and was on crisis watch beginning on February 6, 2024, on the North-2, 5 Gallery at

1

Menard (Doc. 1, pp. 1-3). His cell was contaminated with feces on the walls and door. The cell had no cold running water to drink, had not been allowed to shower for three months, could not obtain a clean smock or blanket, and the cell's bright lights interfered with his sleep. Plaintiff repeatedly asked Defendant Korando (the gallery watch officer) to remedy these problems, but Korando refused to do anything.

Plaintiff's mental illness causes him to cut himself to relieve pain and stress. He self-mutilated more than ten times since being placed on crisis watch and was sent to an outside hospital for treatment on at least five of those occasions. Each time, correctional officers had provided Plaintiff with items he used to cut himself. They also harassed him and encouraged him to kill himself. Defendants Korando and Baker told other inmates that Plaintiff was a "baby raper," which prompted other prisoners to threaten to kill Plaintiff (Doc. 1, pp. 3, 7).

At around 7:45-8:00 a.m. on March 26, 2024, Defendant Baker (the suicide watch officer) slid a staple under Plaintiff's cell door, saying, "Here, just in case you want to kill yourself" (Doc. 1, pp. 3, 7). Hearing that comment, Plaintiff decided that if he couldn't get any relief from the deplorable cell conditions, he would kill himself with the staple (Doc. 1, p. 3). At about 9:00 a.m., Plaintiff asked Korando and Baker again for the feces to be cleaned off the wall, the lights to be turned off, a shower, cold water to drink, and a clean smock and blanket. He told them if he couldn't get those things, he would kill himself with the staple Baker gave him. Korando and Baker started laughing. Korando said, "good;" Baker told Plaintiff to make sure he cut left and right, not up and down. Defendants walked away and Plaintiff began cutting himself, aiming for an artery/vein (Doc. 1, p. 4).

Over the next two hours, Korando and Baker returned and watched Plaintiff cut himself. They told him, "that's not good enough," and screamed to other inmates, "the baby raper Keon

2

Lipscomb is trying to kill himself with a staple" and "die baby rapist." Other inmates repeated that chant. After about an hour, Plaintiff had cut so deeply that he was cutting into tendons. He passed out three times from loss of blood.

At around 11:30 a.m., Korando and Baker opened the hatch in Plaintiff's cell door to cuff him. Because they were loud and aggressive, Plaintiff held up his hands and said he was not cutting himself anymore. However, Baker began spraying Plaintiff with mace through the hatch. Defendants called Plaintiff names and asked how the "spicy spray" felt. Plaintiff tried to cover the hatch with his blanket, but Defendants pulled it away through the hatch and continued to spray him until they ran out of mace. When Plaintiff tried to cuff up, Korando sprayed him with another mace can until it was emptied.[1] Korando and Baker then took Plaintiff to the mental health room.

Plaintiff was transported to Chester Hospital, where he received ten stitches to close his wound. Upon his return, Plaintiff was put in the same cell and housed under the identical conditions with the same dirty smock and blanket. This continued through the date he wrote the instant Complaint on May 2, 2024 (Doc. 1, p. 6).

Korando is a defendant in another lawsuit brought by Plaintiff.[2] Korando's conduct was in retaliation for that case; he made statements that Plaintiff would not get cold water, a clean cell, or a shower because Plaintiff filed a lawsuit against him (Doc. 1, pp. 1, 7, 11). Korando said he would treat Plaintiff worse every time Plaintiff sued him, "until we have to kill you;" "Dismiss me from your case and we'll let you live." (Doc. 1, p. 7).

Plaintiff names Menard Warden Wills as a defendant on the grounds that he is responsible

---

[1] Plaintiff notes that prison rules direct officers to use only a one-second burst of mace/OC spray on individuals in custody, then stop and allow the individual to comply. If officers repeat the one-second burst a second or third time without success, they are to contact their superior. Defendants did not follow these policies and instead sprayed Plaintiff with two full cans of mace (Doc. 1, p. 6).
[2] *Lipscomb v. Crane, et al.*, Case No. 23-cv-2800-NJR (S.D. Ill filed Aug. 15, 2023). Korando received notice of the lawsuit on January 4, 2024 (Doc. 32 in Case No. 23-2800).

for Plaintiff's safety and Plaintiff had written to Wills about Korando's harassment, but Plaintiff has remained on the gallery overseen by Korando (Doc. 1, p. 2).  Plaintiff sues Korando and Baker in their individual and official capacities and sues Wills in his official capacity only.[3]

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | | |
|---|---|---|
| Count 1: | | Eighth Amendment excessive force claim, and Fourteenth Amendment due process claim, against Baker and Korando for spraying Plaintiff with chemical agents on March 26, 2024, when Plaintiff was not harming himself or others and presented no threat. |
| Count 2: | | Eighth Amendment deliberate indifference/failure to protect claim against Baker and Korando for providing Plaintiff with a staple on March 26, 2024, encouraging Plaintiff to kill himself, observing Plaintiff cutting himself and bleeding for two hours, and failing to intervene to stop Plaintiff from harming himself. |
| Count 3: | | Eighth Amendment cruel and unusual punishment claim against Baker and Korando for housing Plaintiff in a cell contaminated with feces and lacking cold drinking water; refusing him access to a shower; and refusing to provide him with clean clothing or a clean blanket, between February 2, 2024 and May 2, 2024. |
| Count 4: | | Eighth Amendment claim against Baker and Korando for endangering Plaintiff's physical safety by telling other inmates that Plaintiff raped and killed a baby. |
| Count 5: | | First Amendment claim against Korando, for housing Plaintiff in unsanitary conditions, using excessive force against him, encouraging him to kill himself, and telling other inmates about Plaintiff's conviction, in retaliation for Plaintiff's previous lawsuit against Korando. |
| Count 6: | | State law assault/battery claim against Baker and Korando for allowing Plaintiff to injure himself and then spraying him with a chemical agent. |
| Count 7: | | State law claim for intentional infliction of emotional distress |

---

[3] Plaintiff requests Defendants to preserve the camera footage from North-2, 5 Gallery on March 26, 2024 between 9:00 a.m. and 11:30 a.m., as well as the footage from the camera outside of 5 gallery on that date and time, as the footage depicts the events he describes (Doc. 1, pp. 2, 11).

>against Baker and Korando for housing Plaintiff in an unsanitary cell, providing Plaintiff with the staple and encouraging him to kill himself, spraying him with excessive amounts of chemical agents, and telling other inmates about his conviction.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). Plaintiff's allegations that he was not resisting Baker's and Korando's efforts to handcuff him and presented no threat to them, to himself, or to others – yet they sprayed him with two entire cans of pepper spray or mace, states a viable claim in Count 1 for excessive force against these defendants.

Plaintiff also invokes the Fourteenth Amendment's Due Process Clause relative to these defendants' use of the chemical spray. He claims they violated prison policy when they emptied two cans of pepper spray/mace on him, instead of spraying the substance in one-second bursts (Doc. 1, p. 8). However, a failure to follow prison rules does not amount to a constitutional violation, and the federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Accordingly, the Fourteenth

5

Amendment portion of Count 1 is dismissed without prejudice.

### Count 2

Prison officials' deliberate indifference to a prisoner's serious medical or mental health needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Suicide is objectively serious. An official is deliberately indifferent to the risk of suicide when the official is "aware of the significant likelihood that an inmate may imminently seek to take his own life" yet "fail[s] to take reasonable steps to prevent the inmate from performing the act." *Pittman ex rel. Hamilton v. County of Madis on, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014) (quoting *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)).

At the time in question, Plaintiff was allegedly on crisis watch and had harmed himself repeatedly over the previous weeks. He alleges that he told Baker and Korando he planned to take his own life using the staple Baker gave him and they took no steps to stop or deter Plaintiff after he told them he would kill himself. He also alleges that they encouraged him to take his life and watched him cut his arm and bleed for two hours while they taunted him, without intervening. These allegations state a claim in Count 2 for deliberate indifference/failure to protect against Baker and Korando.

### Count 3

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). A cell contaminated with human waste can present an excessive risk to the

inmate's health and deprive him of the basic human need for sanitation. *Id.*; *see also Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). Here, in addition to Plaintiff's claim that the cell walls were covered with feces, he allegedly was not allowed to shower for three months and was not provided with clean clothing or bedding. Further, lack of access to sufficient drinking water may subject a prisoner to serious health risks. The Complaint satisfies the objective component of a claim for unconstitutional conditions.

As for the subjective component, Plaintiff alleges that Korando and Baker were well aware of the cell conditions, as he repeatedly asked them to have the cell cleaned, requested a shower, and sought clean clothes and a blanket – all of which the defendants refused. Based on these allegations, Count 3 will proceed against Baker and Korando.

### Count 4

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To state a claim for failure to protect, a plaintiff must plead facts suggesting he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. Here, Plaintiff alleges that defendants created the danger of future bodily harm by telling other inmates that he raped and killed a baby and that his life has been threatened as a result. The Eighth Amendment claim in Count 4 may also proceed against Baker and Korando.

### Count 5

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d

7

859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). In this case, Plaintiff alleges that Korando told him that because he filed a lawsuit against him, Korando would not correct the cell conditions and would continue his harmful treatment until he killed Plaintiff. As such, the Complaint states a colorable retaliation claim against Korando in Count 5 for the mistreatment (detailed in Count 3) as well as the conduct by him alleged in Counts 1, 2, and 4.

**Count 6**

Plaintiff's state law tort claim for assault and battery is based in part on the same facts that support the excessive force claim in Count 1 – the deployment of a chemical agent. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (federal court has supplemental jurisdiction over related state law claims that "derive from a common nucleus of operative fact"). *See e.g. Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 547-48 (7th Cir. 2018) (discussing assault and battery under Illinois law). However, defendants' passive observation of Plaintiff while Plaintiff cut himself does not constitute an assault or a battery. *See Shea*, 746 F. App'x at 548. Count 6 may proceed against Baker and Korando only for the conduct of spraying Plaintiff with mace/OC spray. That portion of Count 6 based on defendants allowing Plaintiff to self-harm is dismissed without prejudice.

**Count 7**

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d

8

1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Plaintiff's allegations satisfy this pleading standard. Therefore, Count 7 will proceed against Baker and Korando.

### Official Capacity Claims/Injunctive Relief

Plaintiff raises claims against Defendants Baker and Korando in their individual and official capacities. However, claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against Baker and Korando are dismissed without prejudice.

Plaintiff sues Warden Wills only in his official capacity; he does not allege that Wills had any personal involvement in the events described in Counts 1-7. However, the doctrine of *respondeat superior* (supervisory liability) does not apply to § 1983 actions. Instead, to state an actionable claim, a supervisory defendant must be alleged to be personally responsible for the constitutional violation. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Plaintiff's Complaint does not state a viable claim for damages against Wills. However, Wills is the proper party to implement any injunctive relief that may be ordered in connection with Plaintiff's claims. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out). Therefore, Wills will remain as a defendant in his official

capacity only.

### Preservation of Video Evidence

The Complaint requests the Court to order the production and preservation of the video camera footage on March 26, 2024 of Menard's North-2, 5 Gallery and from the camera on the outside of 5 Gallery, from the hours of 9:00 a.m. through 11:30 a.m. (Doc. 1, pp. 2, 10). "The duty to preserve evidence relevant to litigation is well recognized." *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, No. 12-md-02385-DRH-SCW, 2013 WL 5377164, at *5 (S.D. Ill. Sept. 25, 2013). A party has a duty to preserve evidence when he knows, or should have known, that litigation is imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). This duty attaches when the defendant is put on notice of impending litigation. *Motel 6*, 534 F.3d at 681; *Langley by Langley v. Union Elec. Co.* 107 F. 3d 510, 514 (7th Cir. 1997) ("From the initiation of the suit, appellant has been obliged to preserve evidence"). Upon service of the Complaint, which includes the request for evidence preservation, Defendants will be on notice of the litigation and will have the duty to preserve information relevant to Plaintiff's claims. Accordingly, the request is **DENIED as MOOT**.

### Disposition

The Complaint states colorable claims in Counts 1-7, as limited above, against Baker and Korando.

The Clerk shall prepare for Q. Baker (#16083), Lance Korando, and Menard Warden Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and

return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  August 12, 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.